UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CHARLES THOMAS WHITEMAN,

                Petitioner,

v.                                    Case No:  5:13-cv-409-Oc-10PRL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS
and FLORIDA ATTORNEY GENERAL,

                Respondents.

_____/

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Charles Thomas Whiteman ("Petitioner"), a prisoner of the Florida Department of Corrections (Doc. 1, filed August 26, 2013).  Petitioner attacks the conviction entered against him by the Fifth Judicial Circuit Court in Marion County, Florida for lewd and lascivious battery of a child between twelve and sixteen years old. *Id.*  Respondents filed a response to the petition (Doc. 13).  Petitioner filed a reply (Doc. 17), and the case is now ripe for review.

Petitioner raises four claims and three sub-claims in his petition.  He asserts that: (1) trial counsel ("Counsel") was ineffective for failing to properly prepare for a hearing on the state's motion to present collateral crimes evidence (with sub-claims); (2) the trial court erred when it allowed inadmissible collateral crimes evidence to be considered by the jury; (3) the trial court erred by failing to repeat a limiting jury instruction on collateral crimes evidence; and (4)  appellate counsel was ineffective for failing to appeal the trial

court's erroneous failure to repeat a limiting jury instruction on collateral crimes evidence (Doc. 1 at 6-37).

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be denied.  Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.    Background and Procedural History[1]

On December 5, 2008, the State of Florida charged Petitioner by amended information with sexual battery, in violation of Florida Statute § 794.011(5) (count one); lewd and lascivious battery on a child between twelve and sixteen years old, in violation of Florida Statute § 800.04(4)(a) (count two); and selling, giving, or serving an alcoholic beverage to a person under twenty-one years old, in violation of Florida Statute § 562.11(1)(a) (count three) (Ex. A at 4).

Prior to trial, the state filed a notice that it planned to offer evidence of other crimes, wrongs, or acts of child molestation (Ex. A at 25).  After a hearing on the notice (Ex. C at 1-38), the trial court found "clear and convincing evidence" of a prior act, and determined that the prior acts testimony would be allowed at trial. *Id.* at 34-35.

---

[1] Unless indicated otherwise, citations to appendices or exhibits are to those filed by Respondents on February 25, 2014 (Doc. 14).  Citations to the trial transcript, located in Exhibit B, are cited as (T. at __). Citations to the transcript of the evidentiary hearing held on Petitioner's Rule 3.850 motion, located in Exhibit E are cited as (EH at __).  Citations to the transcript of Petitioner's *Williams* Rule (collateral crimes) hearing, located in Exhibit C, are cited as (WR at __).

After his trial, the jury found Petitioner guilty as charged (Ex. A at 75-77).   The conviction for sexual battery was vacated by the trial court because it was an alternative charge based upon the same conduct as count two (T. at 281-82).   The trial court sentenced Petitioner to a total sentence of thirty years in prison on the remaining convictions (Ex. A at 74, 126-34). Florida's Fifth District Court of Appeal affirmed Petitioner's convictions and sentences (Ex. D at 39); *Whiteman v. State*, 65 So. 3d 1065 (Fla. 5th DCA 2011) (per curiam).

On October 3, 2011, Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") raising two claims of ineffective assistance of counsel and one claim of trial court error (Ex. E at 1-73).   The post-conviction court held an evidentiary hearing on November 29, 2011 (Ex. E at 89-128).   On January 23, 2012, Petitioner filed a supplement to his Rule 3.850 motion raising an additional claim of ineffective assistance of counsel (Ex. E at 129).   On April 9, 2012, the post-conviction court denied the Rule 3.850 motion and struck the supplement to the motion because it was not verified or sworn to and contained no oath (Ex. F at 135-46). On April 2, 2013, Florida's Fifth District Court of Appeal affirmed the post-conviction court's denial of the Rule 3.850 motion without a written opinion (Ex. G at 114); *Whiteman v. State*, 111 So. 3d 897 (Fla. 5th DCA 2013) (per curiam).

Petitioner filed a state habeas petition for writ of habeas corpus on March 14, 2012 in which he raised one claim of ineffective assistance of appellate counsel (Ex. H at 1). On June 8, 2012, Florida's Fifth District Court of Appeal denied the petition without a written opinion (Ex. H at 26).

Petitioner signed the instant petition on August 22, 2013 (Doc. 1).

3

## II.   Governing Legal Principles

### A.   Standard of Review

Pursuant to 28 U.S.C. §§ 2254(d)(1) and (2), federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Notably, a state court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law."

*Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to

5

decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1*); Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); *Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013) (same).

### B.      Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.*  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt.  *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 563 U.S. 170 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Id.* at 689.

Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The foregoing analysis also applies to claims of ineffective assistance of appellate counsel. "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." *Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) (citing *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)).

### C.    Exhaustion and Procedural Default

The Antiterrorism Effective Death Penalty Act ("AEDPA") precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has

exhausted all means of available relief under state law.   Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)).   The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.   *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750.   If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. *Spencer v. Sec' y, Dep't of Corr.*, 609 F.3d 1170, 1179–80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some

objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. *Crawford v. Head*, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"  *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.   <u>Analysis</u>

The claims raised in the instant petition are primarily directed toward the admissibility of the collateral crimes evidence presented at Petitioner's trial.   However, a brief summary of the evidence presented at trial will provide context to the arguments and discussion in this Order.  In his brief on direct appeal, Petitioner summarized the evidence as follows:

> D.S., who was 14 years old at the time, was to spend the night at [Petitioner's] house and do some work and fishing the next day.  His friend, W.D., was to join them and spend the night also.   Before W.D. got there, D.S. and [Petitioner] were watching TV.  [Petitioner] gave him alcohol – three or four mixed drinks and shots.  He became sick and threw up a

couple times.   [Petitioner] suggested a ride, which D.S. thought would help clear his head, so they left in [Petitioner's] vehicle.

D.S. passed out and the next thing he knew, he was lying face down, on the ground, in a wooded area.  He had no clothes on.  He had been wearing a shirt, pants and underwear when he left the home.  He felt [Petitioner] trying to insert his penis into his anus, which he was able to do.  D.S. passed out again and woke to find that he was flipped over and [Petitioner] was sucking on his penis.

When he woke a third time, they had pulled up to [Petitioner's] home, where his friend, W.D., and his dad were waiting for them.  D.S. left with them, told them what happened, and the police were called.  When he returned, D.S. had his pants on, nothing else.  He appeared ill and disheveled.

A subsequent sexual assault examination showed abrasions to his back, and the presence of dirt and debris on his penis and anal area.  There was redness, but no tears, around the anal area.

. . .

[Petitioner] was found guilty and faces a 30-year sentence.

(Ex. D at 9-10) (internal citations to the trial transcript omitted).

## A.   Claim One

Petitioner asserts that Counsel was ineffective for failing to: (1) adequately prepare for the *Williams*[2] rule hearing on the state's motion to introduce collateral crimes evidence (sub-claim one); (2) use the state's collateral witness' prior inconsistent testimony for

---

[2] *Williams v. State*, 110 So. 2d 654 (Fla. 1959) (relevant evidence of collateral crimes is admissible at a jury trial when it does not go to prove the bad character or criminal propensity of the defendant but is used to show motive, intent, knowledge, modus operandi, or lack of mistake). Florida Statute § 90.404(2)(b) has codified this rule in criminal cases in which the defendant is charged with child molestation, stating that in such cases, "evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant."

impeachment purposes at trial (sub-claim two); and (3) call exculpatory witnesses at trial to impeach the collateral crime victim (sub-claim three) (Doc. 1 at 6-30).[3]

### 1.    Sub-claims One and Two

The first two sub-claims of Claim One concern the evidence presented at Petitioner's hearing on the state's motion to present collateral crimes evidence and the collateral crimes evidence actually presented at trial.  Specifically, Petitioner asserts that, had Counsel adequately researched and impeached the state's collateral crime victim, I.M., with his (I.M.'s) prior statements to the police, the collateral crimes evidence would not have been allowed at trial or, if allowed at trial, the weight of I.M.'s testimony would have "been substantially reduced or non-existent." (Doc. 1 at 25).   The first two sub-claims were raised in Petitioner's Rule 3.850 motion, and after holding an evidentiary hearing, the post-conviction court concluded that the second sub-claim was merely a restatement of the first sub-claim and denied both as follows:

> [T]he defendant alleges his trial counsel could have produced evidence during the *Williams* Rule hearing prior to trial to counter the evidence offered by the State at said hearing. Defendant identified two witnesses, Deputy [Patricia] Winkler and Detective Robert Peavy, whom he indicates would have impeached the credibility of the State's *Williams* Rule witness, a minor identified herein as I.M.  Deputy Winkler was the first responding officer and Detective Peavy did the follow-up investigation in the case.   Defendant alleges Mr. Burford "could have produced evidence during the [hearing] to counter the evidence presented by the State."   Defendant does not identify what evidence he believes should have been produced by his counsel.  The crux of the claim is that I.M. did not tell the officers the same thing he testified to at the *Williams* Rule hearing.   Specifically, when I.M. spoke to

[3] Although Claim One appears to center around Counsel's failure to effectively impeach the state's collateral crime victim, the petition includes a great deal of unrelated information and allegations.  Because Claim One is exhausted only to the extent it was adjudicated in state court, the Court will assume Petitioner intends to raise the same claims in the instant petition as were raised in his Rule 3.850 motion in state court.

Detective Peavy, he did not report that he had been inappropriately touched or fondled in any way by the defendant, which is contrary to his *Williams* Rule hearing testimony and his trial testimony.  When I.M was interviewed by the officers, he did not tell them about him being the victim of a prior touching.  The court ruled that matter went to the weight of the evidence, not its admissibility, and allowed the testimony over Mr. Burford's objection.

At the evidentiary hearing the defendant acknowledged that the testimony of the two officers would have been hearsay because they would merely have been repeating what they were told.  When asked what evidence he believed Mr. Burford should have offered at the *Williams* Rule hearing, the defendant identified the police report prepared by Deputy Winkler.  The Defendant also acknowledged that at the *Williams* Rule hearing Mr. Burford argued that the prior act had not been established by clear and convincing evidence, and he objected to the similar fact evidence being admissible at trial, but that the trial court overruled the objection and allowed the testimony to be offered at trial.  Finally, the defendant acknowledged that Mr. Burford can't be accountable for what the court does; that is, Mr. Burford did object to the *Williams* Rule evidence, made a record for appeal purposes, and has no control over the court subsequently overruling his objection and allowing the evidence to come in at trial.

As mentioned, Mr. Burford preserved the *Williams* Rule matter for purposes of appeal.  Indeed, the sole issue on direct appeal was the issue of the trial court allowing the similar fact evidence in at trial.  The defendant's argument, both at the *Williams* Rule hearing and on appeal, was the prior incident was not sufficiently similar to the offense for which defendant was convicted, and it was not established by clear and convincing evidence.

. . .

Mr. Burford testified that he did question the witness on cross examination at trial and attempt to impeach him with his prior statements to the officers.  The trial transcript verifies this attempt[.]  Mr. Burford then called Detective Peavy at trial to testify to the jury that during the investigation I.M. did not allege having been touched by the defendant.  Mr. Burford acknowledged he did not call Deputy Winkler at trial.  Winkler was subpoenaed for trial but was not available, and Winkler's testimony would have been repetitive or a duplication [of]

Peavy's testimony.   Nonetheless, the jury was made aware that the *Williams* Rule witness, I.M., at the time the incident involving him was being investigated, denied the defendant had touched him.  The trial transcript reflects that Mr. Burford did call Detective Peavy at trial and Peavy confirmed that I.M. had not alleged the defendant touched or fondled him in any way after having been asked twice by the officer about that specific fact.  This claim is without merit.

(Ex. E at 139-41) (footnote and internal citations to the record omitted).    Florida's Fifth

District Court of Appeal per curiam affirmed the post-conviction court's decision (Ex. G at

114).  A review of the record supports the state courts' conclusions.

At Petitioner's *Williams* Rule hearing, collateral crime victim I.M. testified that when

he was twelve years old, he spent the night with Petitioner's son at Petitioner's home (EH

at 14-15).  Petitioner provided I.M. with alcohol, and I.M. fell asleep on Petitioner's sofa.

*Id.*  He awoke to Petitioner removing his jeans and touching his penis. *Id.* at 17-18.

Petitioner's son woke and called to his father, and Petitioner left. *Id* at 18-20.  The next

morning, I.M. told his mother what happened, and she contacted the police. *Id.* at 20.  On

cross examination, Counsel questioned I.M. as to whether he told the police that

Petitioner had touched his penis, and I.M. testified that he had done so. *Id.* at 24.  Counsel

then asked the court to review a Marion County Sheriff's Office incident report indicating

that I.M. had not told Patricia Winkler, the first investigating officer, that Petitioner had

touched his penis,[4] and the following exchange occurred:

---

[4] The pertinent part of Officer Winkler's report reads:

Upon arrival, I made contact with subject [I.M.] who stated that subject Charles Whiteman had pulled down his pants on 12-29-06 possibly at Whiteman's residence.  [I.M.] stated that subject Christopher Chesser and he went with subject Whiteman to Charles Whiteman's house.  [I.M.] stated that he and subject Chesser were playing instruments until subject Chesser had to stop because of a pain from a tooth injury.  [I.M.] stated subject Chesser took some medication and went to sleep.  [I.M.] stayed with subject Whiteman for a little while longer, until he finally went to sleep.

COUNSEL: First of all, your Honor, I'd like the Court to review the Marion County Sheriff's Office incident report dated 12/30/2006. It's authored by Pat Winkler who was a deputy sheriff at that time and she interviewed [I.M]. This was supplied to me by the State so I think you know what I'm referring to.

In that narrative –

STATE: If you're about to read from it, I do have a hearsay objection.

COUNSEL: This is a preliminary hearing. I think hearsay is admissible. But if you want, I'll get Pat Winkler in here to read it to you.

COURT: Well, is this the report about –

COUNSEL: Yes, sir, when reported to the sheriff's office, through his mother, that he had been molested by Mr. Whiteman. And I asked him specifically, do you know what you told them and he said the same thing I said here in court today. When in truth and fact, the report indicates that all he reported was that his pants and boxer shorts were pulled down and he said that [I.M.] immediately got up and went to the bathroom. He did not report being touched in a sexual way. He did not report what he told this Court here today. And I'll offer that to the Court.

COURT: Well, I don't really need it, Mr. Burford.

COUNSEL: Well –

COURT: Do you have something in addition to that?

---

At approximately 2130 and 2230 hours, [I.M.] was awaken [sic] by subject Whiteman pulling down his pants and boxer shorts. [I.M.] stated that he was naked from the waist down. [I.M.] stated he immediately got up and went to the bathroom. **[I.M.] stated he did not know if subject Whiteman had touched him. [I.M.] did not have any evidence or injury from subject Whiteman possibly touching him.** After that incident, nothing further occurred between the two subjects, [I.M.] stayed overnight and then call [sic] his mother to pick him up the next morning.

(Doc. 1-1 at 45) (emphasis added).

COUNSEL:   Well, sir, I'd like to have some argument.

COURT:   All right. Go ahead.

COUNSEL:   The reason that's important is because in order to admit *Williams* Rule evidence, the Court must find there's clear and convincing evidence of the prior incident.   I submit to you that [I.M.] impeached himself here in court today by saying that he disclosed, back in 2006, what he said here in court today and that's not true.  So how could it be clear and convincing to meet that standard of admissibility[?]

(WR at 29-30).  After listening to extensive argument from Counsel and the state, the trial

court concluded that the collateral crimes evidence was admissible:

The Court finds that there is sufficient similarity in the prior act regarding the location, the age, the gender and the manner to meet that criteria.   The time, its three years but it's not so remote as to result in its exclusion.  There are a number of cases where the time has been substantially longer than that. That, in connection with the similarities, regarding the age, gender, manner and location, the Court finds it more probative than prejudicial.  The Court finds the State has established by clear and convincing evidence that the prior act – that a prior act occurred.

Now as to the issue of the inconsistency with his testimony today and what the police were informed of in 2006, the Court finds that goes to the weight versus the admissibility and is subject to your cross-examination and impeachment of the witness during the trial.

(WR at 34).    At trial, I.M. again testified that Petitioner provided him with alcohol, and

after drinking several drinks, he fell asleep on Petitioner's sofa (T. at 214-15).  He woke

to Petitioner removing his jeans and touching his penis.  *Id.* at 216-17.  Petitioner's son

woke, and called to his father, and Petitioner left.  *Id* at 218.    On cross-examination,

Counsel questioned whether I.M. had told the police that Petitioner touched his penis,

and I.M. stated that he had done so. *Id.* at 221.  In an attempt to impeach I.M.'s testimony,

Counsel called Officer Robert Peavy of the Marion County Sheriff's Office, who had done the follow-up investigation on I.M.'s case. *Id.* at 231.  Officer Peavy testified that I.M. told him he did not know how his pants and underpants got pulled down. *Id.* at 232.  Officer Peavy also testified that he had specifically asked I.M. whether Petitioner touched him inappropriately, and I.M. had denied it. *Id.* at 232-33.  On cross-examination, Peavy testified that adolescent boys who are sexually molested often minimize what happened to them. *Id.* at 234-35.

At the evidentiary hearing on Petitioner's Rule 3.850 motion, Petitioner admitted that Counsel attempted to impeach I.M.'s testimony during the *Williams* Rule hearing with Officer Winkler's report, but argued that it was not "right" that I.M. could lie during the hearing (EH at 31).  As to Counsel's failure to call both Officer Winkler and Officer Peavy to impeach I.M.'s trial testimony, Counsel explained his reasoning at the evidentiary hearing:

> In trial, the collateral witness testified.  I attempted to impeach him based upon the prior statements that he gave to the police.  He denied making those statements.  So, I called Detective Peavy to testify to the jury that, in fact, at the time of the investigation [I.M.] denied that he was touched by Mr. Whiteman.
>
> Mr. Whiteman's point is that I didn't call Pat Winkler.  I did subpoena her, but she was unavailable at the time.  And it's true that her testimony would have been a duplication of Detective Peavy's.  That, and, of course, there's a fundamental rule that you can't present duplicate evidence. You can present it once; you can't call in 15 witnesses to say the same thing.  So, even if I'd have offered Detective Winkler's testimony, it probably would have been overruled on [the state's] objection that it was repetitive.  And so, that's how it went to the jury.
>
> The jury was fully aware that the collateral witness at the time of his incident denied that he was touched by Mr. Whiteman. That was our point.

16

(EH at 26-27).    Based on the trial transcript and Counsel's testimony at the evidentiary hearing, reasonable counsel could have decided against calling Detective Winkler at trial on the grounds that: (1) the jury was fully apprised of I.M.'s failure to inform the police that Petitioner had touched his penis; and (2) Officer Winkler's testimony was merely duplicative of Detective Peavy's testimony. *See*, *e.g.*, *Routly v. State*, 590 So. 2d 397, 401-02 (Fla. 1991) (counsel not ineffective when most of the evidence that defendant claimed should have been presented was already before the judge and jury, albeit in a different form); *Lynch v. State*, 2 So. 3d 47, 71 (Fla. 2008) ("[T]his Court has held that 'even if alternate witnesses could provide more detailed testimony, trial counsel is not ineffective for failing to present cumulative evidence.'") (citing *Darling v. State*, 966 So. 2d 366, 377 (Fla. 2007)).[5]

Given the record support for the state courts' adjudication of this claim, their decisions were not contrary to, or an unreasonable application of, *Strickland.*  Nor does Petitioner show that the state courts' conclusions were based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, the first two sub-claims are due to be denied pursuant to 28 U.S.C. § 2254(d).

---

[5] Petitioner now argues that the officers' testimony would have differed because Officer Winkler's report stated that I.M. told her that Petitioner pulled down his pants whereas Officer Peavy's report stated that I.M. claimed he did not know whether Petitioner pulled down his pants.  Even if this discrepancy was sufficient to justify having both officers testify, Officer Winkler's report was far more damaging to Petitioner than Officer Peavy's because it implicated Petitioner in child molestation whereas Officer Peavy's report did not. Accordingly, reasonable counsel could have decided against presenting the testimony of Officer Winkler. Although Counsel did not testify at the evidentiary hearing that this was his reason for not calling Officer Winkler to testify at trial, Counsel's *actual* motivation is irrelevant on federal habeas review. *See Castillo v. Sec'y, Fla. Dep't of Corr.*, 722 F.3d 1281, 1285 n.2 (11th Cir. 2013) ("The relevant question under *Strickland*'s performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons.").

## 2.    Sub-claim Three

In his third sub-claim, Petitioner repeats his assertion that Counsel should have called both Officer Winkler and Officer Peavy to testify at the *Williams* Rule hearing to show the trial court that Petitioner had not told the officers that Petitioner had touched his penis (Doc. 1 at 27-28).  He also argues that Counsel was ineffective for failing to call I.M.'s grandmother to testify about I.M.'s history of sleepwalking. *Id.* at 28.  Respondents urge that this portion of Claim One is unexhausted and should be dismissed (Doc. 12 at 9).   Indeed, Petitioner did not raise this claim in his Rule 3.850 motion (Ex. G).

Even were this Court to consider this sub-claim under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) as Petitioner urges in his reply (Doc. 17 at 3), Petitioner would not be entitled to relief. In *Martinez*, the United States Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320.[6]   Although *Martinez* may open the door to a federal district court's consideration of certain ineffective assistance of trial counsel claims, a petitioner must establish that his underlying ineffective assistance claim is "substantial" - that is, that it has "some merit" before the procedural default can be excused. 1132 S. Ct. at 1318-19. Sub-claim three is not "substantial" and does not fall within *Martinez'* equitable exception to the procedural bar.

---

[6] In 2013, the Supreme Court confirmed that the *Martinez* ruling applied to prisoners who technically had the ability to bring their ineffective assistance claims on direct appeal of their conviction, but for all intents and purposes had to bring it in their first habeas petition. *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013).

First, Petitioner cannot show prejudice from Counsel's failure to call Officer Peavy at the *Williams* Rule hearing. The trial court was aware of the inconsistencies between the police report and I.M.'s testimony, but made it clear that "the issue of the inconsistence with [I.M.'s] testimony today and what the police were informed of in 2006, . . . goes to the weight versus the admissibility and is subject to [Counsel's] cross-examination and impeachment of the witness during the trial." (WR at 34).

Next, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Petitioner has not provided the Court with a sworn statement from I.M.'s grandmother detailing the substance of her testimony. Consequently, Petitioner's claim is too speculative to warrant relief. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.' ") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)). *See also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

The third sub-claim of Claim One is not "substantial" so as to excuse its procedural default in state court. *Martinez*, 132 S. Ct. at 1318-20. Nor has Petitioner presented new, reliable evidence indicating that the actual innocence exception applies to excuse his

default of this claim.   This sub-claim is due to be dismissed as unexhausted and procedurally barred.

### B.    Claim Two

Petitioner asserts that the trial court violated his constitutional right to a fair trial by allowing the introduction of collateral crimes evidence (Doc. 1 at 30).   Specifically he asserts that the alleged molestation of I.M. was not sufficiently similar to the charged offense, and the state did not prove by clear and convincing evidence that the prior act had occurred. *Id.* at 30-31.   Respondents argue that this claim should be dismissed because Petitioner did not raise its constitutional aspect in state court (Doc. 12 at 9-10). A review of the state court record and applicable law supports Respondents' assertions.

To the extent Petitioner urges that the trial court erred under Florida law by admitting evidence of his alleged molestation of I.M., the claim is not cognizable on federal habeas review.  "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," because the state court "has wide discretion in determining whether to admit evidence at trial[.]" *Alderman*, 22 F.3d at 1555; *see also Baxter v. Thomas*, 45 F.3d 1501, 1509 (11th Cir. 1985) (federal habeas corpus is not the proper vehicle to correct evidentiary rulings); *Boykins v. Wainwright*, 737 F.2d 1539, 1543 (11th Cir. 1984) (federal courts are not empowered to correct erroneous evidentiary rulings in state court except where rulings deny petitioner fundamental constitutional protections).  Therefore, it is not for this Court on federal review to decide whether the state trial court erred under Florida law by admitting evidence; rather, this Court may only consider whether the state trial court unreasonably

applied clearly established federal law, "as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d).  Petitioner has not made this showing.

To the extent Claim Two can be liberally construed to raise a federal constitutional challenge to the admission of collateral crimes evidence regarding Petitioner's alleged molestation of I.M., the claim is unexhausted because Petitioner did not present the federal constitutional nature of this claim to the state appellate court on direct appeal. When briefing this claim, Petitioner did not state, or even suggest, that it was a federal claim about due process or any other federal constitutional guarantee.  Rather, he argued, in terms of state law only, that the "clear and convincing" standard for reliability had not been met and that the "alleged prior act was dissimilar in some significant respects to the charged offense." (Ex. D at 15-17) (citing *Audano v. State*, 641 So. 2d 1356 (Fla. 2d DCA 1994); *Alsfield v. State*, 22 So. 3d 619 (Fla. 4th DCA 2009); *Fiore v. State*, 967 So. 2d 995, 997 (Fla. 5th DCA 2007)).  Petitioner further argued that the prior incident "must inevitably have assumed critical importance in the minds of the jurors." *Id.* at 17 (citing *Downs v. State*, 40 So. 3d 39 (Fla. 5th DCA 2010); *McLean v. State*, 934 So. 2d 1248 (Fla. 2006)).

Petitioner's failure to exhaust the federal basis of his claim renders it both unexhausted and procedurally defaulted because he is barred by state procedural rules from returning to state court to exhaust the federal constitutional nature of this claim. Petitioner has shown neither cause excusing the default nor actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. The default bars federal habeas review of Claim Three. *See Duncan*, 513 U.S. at 366 ("If a habeas petitioner wishes to claim that

an evidentiary ruling at a state court trial denied him the due process of law guarantee by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

Finally, even assuming *arguendo* that this claim is exhausted and raises a federal due process issue, Petitioner is not entitled to habeas corpus relief because he does not identify a Supreme Court case holding that the admission of similar fact or collateral crime evidence in similar circumstances is unconstitutional.  Therefore, he cannot show that the appellate court's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law. *See Quintero v. McNeil*, No. 4:08cv318/RH/MD*, 2009 WL 1833872 (N.D. Fla. June 23, 2009) (denying habeas relief on ground that there is no clearly established federal law as determined by the Supreme Court suggesting that the admission of evidence that a defendant committed sexual battery on another child violated due process); *Lutz v. Palmer*, No. 3:11cv334/LAC/EMT, 2012 WL 4660685, at *16 (N.D. Fla. Sep. 10, 2012) ("Petitioner has pointed to no Supreme Court precedent holding that the admission of relevant evidence, even evidence of a defendant's other bad acts, violates the Due Process Clause"); *O'Leary v. Sec'y, Fla. Dep't of Corr.*, No. 2:12-cv-599-FtM-29CM, 2015 WL 1909732, at *7 (M.D. Fla. Apr. 27, 2015) ("Petitioner is not entitled to habeas relief because he has failed to identify a Supreme Court case holding that the admission of similar fact or collateral crime evidence in similar circumstances was unconstitutional."); *Woodward v. Sec'y, Fla. Dep't of Corr.*, No. 3:13-cv-155, 2-16 WL 1182818 (M.D. Fla. Mar. 28, 2016) (same).[7]

---

[7] The Supreme Court <u>has</u> addressed whether prior acts evidence is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997), *Huddleston v. United States*, 485 U.S. 681 (1988).  However, these cases did not explicitly address the admission of such evidence in constitutional terms.

Upon consideration of the foregoing, the Court concludes that Claim Two is due to be dismissed as unexhausted and procedurally barred.  Moreover, Claim Two is due to be denied on the merits pursuant to 28 U.S.C. § 2254(d).

### C.    Claim Three

Petitioner asserts that the trial court violated his constitutional right to a fair trial and due process by providing the jury with inadequate jury instructions (Doc. 1 at 34). Specifically, he argues that, although the instruction regarding a jury's consideration of collateral crimes evidence was given prior to the introduction of that evidence, it was not repeated during the court's final charge to the jury. *Id.* at 35.  Petitioner asserts that this was an error under Florida Statute § 90.404(2)(c)(2) (2009).[8] *Id.*

Respondents urge that this claim is procedurally barred from federal habeas review because it was found to be procedurally barred by the post-conviction court when raised in Petitioner's Rule 3.850 motion (Doc. 12 at 9).  Indeed, the post-conviction court denied Claim Three as follows.

> The *Williams* Rule or similar fact evidence instruction, was given to the jury just before the *Williams* Rule witness (IM) testified.  The instruction was not given a second time at the close of the evidence during the presentment of the remaining jury instructions before the jury retired to begin deliberations.
>
> In this claim, defendant does not claim ineffective assistance of counsel; rather, he claims fundamental trial court error

---

[8] This statute (which was amended and renumbered after Petitioner's trial) reads:

> When [collateral crimes] evidence is admitted, the court shall, if requested, charge the jury on the limited purpose for which the evidence is received and is to be considered. **After the close of the evidence, the jury shall be instructed on the limited purpose for which the evidence was received and that the defendant cannot be convicted for a charge not included in the indictment or information.**

Fla. Stat. § 90.404 (2)(c)(2) (2009) (emphasis added).

based upon the trial court's failure to read the jury instruction on similar fact evidence to the jury a second time at the close of the evidence.

This claim is procedurally barred because claims challenging the validity of jury instructions should be raised on direct appeal, not on motions for post-conviction relief. *Occhicone v. State*, 768 So. 2d 1037, 1040 fn. 3 (Fla. 2000); *Buenoano v. Duggar*, 559 So. 2d 1116, 1118 (Fla. 1990); and *Gorham v. State*, 521 So. 2d 1067, 1070 (Fla. 1988); *White v. Duggar*, 565 So. 2d 700 (Fla. 1990); *Koan v. Duggar*, 619 So. 2d 246 (Fla. 1993).

(Ex. E at 141-42).[9]  Florida's Fifth District Court of Appeal per curiam affirmed the post-conviction court's denial of this claim without a written opinion (Ex. G at 114).

"A state court's rejection of a petitioner's constitutional claim on state procedural grounds will generally preclude any subsequent federal habeas review of that claim." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).  Further, an appellate court's per curiam affirmance of the trial court's ruling "explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts." *Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990).  The Eleventh Circuit has established a three-part test to determine when a state court's procedural ruling constitutes an independent and adequate state rule of decision. *Judd*, 250 F.3d at 1313.  "First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim." *Id.*  Second, the state court's decision must rest entirely on state law grounds and not be intertwined with an

---

[9] The post-conviction court also noted that, to the extent Petitioner intended to raise an ineffective assistance of counsel claim, he was not entitled to relief because there was no evidence of deficient performance or resulting prejudice (Ex. E at 142).

interpretation of federal law.  *Id.*  Third, the state procedural rule must be firmly established and regularly followed and not applied "in an arbitrary or unprecedented fashion." *Id.*

In the instant case, the post-conviction court clearly dismissed this claim on a state procedural rule which was not intertwined with an interpretation of federal law.  This law is regularly followed in Florida courts. *See Occhicone*, 768 So. 2d at 1040 n.3 ("[C]laims challenging the validity of jury instructions should be raised on direct appeal, not on motions for postconviction relief."); *Gorham*, 521 So. 2d at 1070 ("Because a claim of error regarding the instructions given by the trial court should have been raised on direct appeal, the issue is not cognizable through collateral attack.").  Accordingly, under the three-part test set forth in *Judd*, Claim Three is procedurally barred.  Petitioner has shown neither cause excusing the default nor actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.  Claim Three is due to be dismissed as procedurally barred.

Even if Claim Three was not procedurally barred, it fails on the merits.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").  First, to the extent Petitioner now argues that the trial court violated Florida law when it declined to read the proposed jury instructions, the claim must fail.  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see also* 28 U.S.C. § 2254(a).  Accordingly, the Court may not grant habeas relief based on an alleged error in the interpretation or application of state law. *Estelle*, 502 U.S. at 68; *Dugger v. Adams*, 489 U.S. 401, 409 (1989) ("[T]he

availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution."). Thus, any argument that the trial court's failure to repeat the jury instruction was incorrect under state law is not cognizable on federal habeas review.

Next, even assuming Petitioner's instructional error claim constitutes a cognizable federal issue and is not procedurally barred, he has identified no Supreme Court decision holding that the failure to repeat a limiting jury instruction on collateral crimes evidence violates due process.  To the contrary, federal courts that have addressed this issue have found that "[w]here a contemporaneous limiting instruction has been given to the jury, the court retains discretion to "determine whether the instruction needs repeating at the end of trial." *United States v. Butler*, 102 F.3d 1191, 1196-97 (11th Cir. 1997); *see also Marzec v. Toulson*, 283 F. App'x 740, 742 (11th Cir. 2008) ("The law assumes that jurors follow the instructions given to them. We therefore assume that the jurors followed the court's original limiting instruction, making repetition of that instruction unnecessary.") (citing *Butler*, 102 F.3d at 1196). Although neither *Butler* nor *Marzec*, addressed a state court's failure to repeat a limiting instruction, the Eleventh Circuit's rejection of the same argument now urged by Petitioner, albeit in the context of the direct appeal of a federal trial, suggests that there is no general constitutional right to the repetition of a limiting instruction in the final jury charge.

In *Henderson v. Kibbe*, the Supreme Court addressed a claim from a state habeas petitioner who urged that his due process rights were violated when the state court completely omitted a jury instruction during the jury charge. 431 U.S. 145 (1977).  The Court held:

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process", *Cupp v. Naughten*, 414 U.S., at 147, 94 S. Ct., at 400, 38 L.Ed.2d 368, not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,' " *id.*, at 146, 94 S. Ct., at 400.

> In this case, the respondent's burden is especially heavy because no erroneous instruction was given; his claim of prejudice is based on the failure to give any explanation beyond the reading of the statutory language itself of the causation element. An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.

*Id.* at 1736-37. Under the reasoning in *Kibbe*, Petitioner must prove that the state court's failure to read the limiting instruction a second time "so infected the entire trial" that his resulting conviction for lewd and lascivious battery on a child violated due process. *Id.* The Court does not judge the allegedly erroneous instruction "in artificial isolation," but considers the instruction in the context of the trial record and the jury instructions as a whole. *Kibbe*, 431 U.S. at 152 n. 10 (citing *Boyd v. United States*, 271 U.S. 104, 107 (1926)).

Prior to the introduction of I.M.'s collateral crimes testimony at trial, the trial court read the collateral crimes jury instruction to the jury:

> Ladies and gentlemen, the evidence that you are about to receive concerning evidence of other crimes, wrongs or acts allegedly committed by the defendant will be considered by you for the limited purpose of proving motive, opportunity, intent, plan, the absence of mistake or accident on the part of the defendant or corroboration of the child victim and you shall consider it only as it relates to the those issues. However, the defendant is not on trial for a crime, wrong, or act that is not included in the Information.

(T. at 210-11). A jury is presumed to follow its instructions. *Weeks v. Angelone*, 528 U.S. 225, 226 (2000); *Marzec*, 283 F. App'x at 742. Accordingly, it is presumed that the jury considered I.M.'s testimony only as it related to motive, opportunity, intent, plan, absence of mistake or accident, or corroboration of the child victim. Moreover, the prosecutor specifically told the jury during closing argument that Petitioner was "not on trial for what he did to [I.M.]. He's on trial for what he did to [D.S.]."(T. at 264). Because the jury was already aware of the purpose of the collateral crimes evidence and had been admonished that Petitioner was not on trial for his alleged molestation of I.M., a repeat of the instruction already read to the jury would not have changed its verdict on Petitioner's lewd and lascivious battery charge. Therefore, when considering the omitted instruction in the context of the trial record as a whole, Petitioner has not satisfied his heavy burden of showing that the trial court's failure to repeat the collateral crimes instruction violated due process.

The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, *Kibbe* or any other clearly established federal law and was not based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. In addition to being procedurally barred, Claim Three is due to be denied pursuant to 28 U.S.C. § 2254(d).[10]

---

[10] To the extent Petitioner now attempts to raise an unexhausted ineffective assistance of counsel claim based upon Counsel's failure to request a second reading of the instruction (Doc. 1 at 35), this Court's conclusion that the jury would not have reached a different verdict had the instruction been repeated precludes a showing of *Strickland* prejudice. Accordingly, an ineffective assistance claims would not be "substantial" under *Martinez* and will not be further address by the Court. 132 S. Ct. at 1312 ("To overcome the [procedural] default, a prisoner must also demonstrate that the underlying ineffective-assistance-at-trial claim is substantial.").

## D.    Claim Four

Petitioner asserts that appellate counsel was ineffective for failing to argue that fundamental error occurred when the trial court failed to read the collateral crimes jury instruction a second time after the close of evidence (Doc. 1 at 36).  Petitioner raised this claim in his state habeas petition, and it was rejected by Florida's Fifth District Court of Appeal without a written opinion (Ex. H).

Respondents urge that appellate counsel was not ineffective failing to request a limiting instruction because any issue as to the jury instructions was not preserved for appellate review (Doc. 12 at 27).  Specifically, Respondents note that Petitioner did not request that the instruction be given and did not object to the jury instructions as read during the trial court's charge to the jury. *Id.*  Indeed, Florida courts have been clear that appellate counsel is not ineffective for failing to raise a collateral crimes limiting instruction issue when it was not preserved for appellate review. *See Hardwick v. Dugger*, 648 So. 2d 100, 106-07 (Fla. 1994) (appellate counsel not ineffective for not arguing that the trial court erred by failing to give the jury a limiting instruction as to collateral crimes evidence because the issue was not preserved below); *Walker v. State*, 990 So. 2d 1119, 1121 (Fla. 3d DCA 2008) (because trial counsel did not request a limiting or cautionary instruction on collateral crimes evidence from the trial court, "[a]ppellate counsel was, therefore, not ineffective for failing to raise on direct appeal an issue not preserved for review.").  Moreover, the Florida Supreme Court has expressly held that a trial court's complete failure to give a collateral crimes limiting instruction is not fundamental error. *Pope v. State*, 679 So. 2d 710, 714 (Fla. 1996) (holding that it was not fundamental error for a trial court to fail to give a limiting instruction on collateral crimes evidence).

29

Where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient because it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. *Atkins v. Singletary*, 965 F.2d 952, 957 (11th Cir.1992); *Francois v. Wainwright*, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, reasonable appellate counsel could have concluded, based upon the state court decisions in *Hardwick*, *Walker*, and *Pope*, that raising a fundamental error claim based upon the trial court's error to read the collateral crimes limiting instruction a second time would have been futile. Appellate counsel is not ineffective for failing to raise a futile claim. *Diaz v. Sec'y, Fla. Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) (appellate counsel not ineffective for failing to make a meritless argument).

The state court's rejection of this claim was neither contrary to, nor based upon an unreasonable application of *Strickland*. Neither was the decision was based upon an unreasonable determination of the facts presented in the state court proceedings. Petitioner is not entitled to federal habeas corpus relief on Claim Four.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.    Conclusion

Based on the reasons set forth in this Order, Petitioner's 28 U.S.C. § 2254 petition is **DENIED with prejudice.** The Clerk of Court is directed to terminate any pending motions, close the file, and enter judgment accordingly.

**DONE** and **ORDERED** in Ocala, Florida on this 13th day of May, 2016.


UNITED STATES DISTRICT JUDGE


SA: OrlP-4
Copies: Charles Thomas Whiteman
Counsel of Record